**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>XCELIGENT, INC.<br><div align="center">Debtor.</div> | <div align="center">Chapter 7<br>Bankr. Case No. 17-12937-CSS</div> |
| JEAN MORRIS on behalf of herself and all others similarly situated,<br><br><div align="center">Plaintiff,</div><br><div align="center">v.</div><br><br>XCELIGENT, INC., DMG INFORMATION, INC., and DMGT, PLC,<br><br><div align="center">Defendants.</div> | <div align="center">**Adv. Pro. No. _____ - _____**</div> |

<div align="center">

**CLASS ACTION ADVERSARY PROCEEDING COMPLAINT
FOR VIOLATION OF WARN ACT 29 U.S.C. § 2101, *et seq.***

</div>

Plaintiff Jean Morris ("Plaintiff")[1] alleges on behalf of herself and a putative class of similarly situated former employees of Xceligent, Inc. (the "Debtor" or "Defendant"), DMG Information, Inc., and DMGT, PLC (together "Daily Mail" and, cumulatively with Debtor "Defendants") by way of this Class Action Adversary Proceeding Complaint as follows:

<div align="center">

**<u>NATURE OF THE ACTION</u>**

</div>

1.      This is a class action for the recovery by Plaintiff Jean Morris and the other similarly situated employees of Defendants for damages in the amount of up to 60 days' pay and ERISA benefits by reason of Defendants' violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq*. (the "WARN Act").

---

[1] To date, undersigned counsel has been retained by approximately 40 former employees.

2.      Plaintiff was terminated along with approximately 500 similarly situated employees as part of, or as the foreseeable result of, a mass layoff or plant shutdown ordered by Defendants.

3.      Upon information and belief, Defendants sent a note to staff on December 14, 2017 at about 4 p.m., informing them that operations had ceased, they were "separated," and that they were to pack their belongings and vacate the building "within next thirty minutes."  Within the hour, the instant chapter 7 petition was filed.  These actions came with absolutely no warning to employees.

4.      These terminations failed to give Plaintiff and other similarly situated employees of Defendants at least 60 days' advanced notice of termination, as required by the WARN Act. Due to the alleged WARN Act violation, Plaintiff and other similarly situated employees of Defendants seek their statutory remedies.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, 1367 and 29 U.S.C. § 2104(a)(5).

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1409 and 29 U.S.C. § 2104(a)(5).

## THE PARTIES

### *Plaintiff*

8.      Plaintiff Jean Morris reported to Defendants' location at 103 SE Magellan Drive, Blue Springs, Missouri (the "Blue Springs Facility") and held the position of Field Researcher until her termination on December 14, 2017.

9.      On December 14, 2017, Defendants informed Plaintiff that she was being terminated that day.

10.     Plaintiff received no advanced notice of her termination.

11.     Upon information and belief, none of the terminated employees received any written notice of termination.

### *Defendants*

12.     Upon information and belief, Defendant Xceligent, Inc., is a Delaware corporation with its principal place of business located at the Blue Springs Facility.

13.     Upon information and belief, Defendant DMG Information, Inc. ("DMG Information") is the 86.9% owner of Debtor, and is a Delaware corporation with its principal place of business located at 3 Stamford Landing, 46 Southfield Avenue, Stamford, Connecticut.

14.     Upon information and belief, Defendant DMGT PLC is a United Kingdom public limited company with its principal place of business located at Northcliffe House, 2 Derry Street, Kensington, London, United Kingdom, and is the ultimate parent of Debtor and DMG Information.

15.     Upon information and belief, Debtor together with Daily Mail operated as a single employer and made the decisions and gave the orders that directly caused the terminations of the Plaintiff and other similarly-situated former employees in a mass layoff or plant closing without providing sixty (60) days' advanced notice.

16.     Upon information and belief at all relevant times, Defendants owned, maintained and operated Debtors' corporate headquarters at the Blue Springs Facility, and operated additional facilities as that term is defined by the WARN Act, including, but not limited to, Sedalia, Missouri and Overland Park, Kansas (collectively the "Facilities").

17.     Until her termination by Defendants, Plaintiff and the other similarly situated persons were employees of Defendants who worked at, received assignments from, or reported to Defendants' Facilities.

18.     Upon information and belief, Daily Mail was responsible for the strategic decisions of Debtor and for executing its business plans for Debtor.

19.     Upon information and belief, in August 2017, Daily Mail hired Frank Anton, as an outside consultant to help it formulate a three-year business plan for Debtor, that included Debtor's expansion into major U.S. cities and to profitability.

20.     Upon information and belief, Daily Mail spent about $150 million by the fall of 2017 advancing its plan to expand Debtor's business into major cities, but was disappointed by the results.

21.     Upon information and belief, Daily Mail, at that time, held direct discussions with Debtor's Chief Executive Officer Doug Curry and his wife, Erin, Debtor's chief human resources officer.

22.     Upon information and belief, when those discussions ended in late October, Daily Mail fired Doug Curry and appointed Frank Anton as Debtor's Executive Chairman.

23.     Upon information and belief, weeks before Daily Mail decided to shut it down and liquidate Debtor's business, Daily Mail wrote down to zero the value of Debtor on its own books.

24.     Upon information and belief, Daily Mail shut down Xceligent and its Facilities to escape from the mounting expenses and liabilities it faced due to Debtor's failed business.

25.     Upon information and belief, the steps Daily Mail took to discontinue Debtor's operations and place it in liquidation foreseeably and directly resulted in the termination of Debtor's employees who worked at or reported to its Facilities on December 14, 2017.

26.     Upon information and belief, on December 14, 2017, Defendants terminated approximately 500 employees.

27.     On December 14, 2017, Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

## FEDERAL WARN ACT CLASS ALLEGATIONS

28.     Plaintiff brings this Claim for Relief for violation of 29 U.S.C. § 2101 *et seq.*, on behalf of herself and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Fed. R. Civ P. 23(a), who worked at, reported to, or received assignments from Defendants' Facilities and were terminated without cause beginning on or about December 14, 2017, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about December 14, 2017 and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "WARN Class").

29.     The persons in the WARN Class identified above ("WARN Class Members") are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

30.     Upon information and belief, Defendants employed more than 100 full-time employees who worked at or reported to the Facilities.

31.     On information and belief, the identity of the members of the class and the recent residence address of each of the WARN Class Members is contained in the books and records of Defendants.

32.     On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member at the time of his/her termination is contained in the books and records of Defendants.

33.     Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following:

(a)     whether the members of the WARN Class were employees of the Defendants who worked at or reported to Defendants' Facilities;

(b)     whether Defendants unlawfully terminated the employment of the members of the WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the WARN Act; and

(c)     whether Defendants unlawfully failed to pay the WARN Class members 60 days wages and benefits as required by the WARN Act.

(d)     whether the degree of independence exercised by Debtor from its Daily Mail parents was sufficient to make it a separate employer with regard to the decision to shut down their business and discharge their employees

34.     Plaintiff's claims are typical of those of the WARN Class.  Plaintiff, like other WARN Class members, worked at or reported to one of Defendants' Facilities and was terminated beginning on or about December 14, 2017, due to the mass layoff and/or plant closing ordered by Defendants.

35.     Plaintiff will fairly and adequately protect the interests of the WARN Class. Plaintiff has retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation.

36.     On or about December 14, 2017, Plaintiff was terminated by Defendants.  This termination is part of a mass layoff or a plant closing as defined by 29 U.S.C. § 2101(a)(2), (3), for which he was entitled to receive 60 days advance written notice under the WARN Act.

37.     Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

38.     Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

39.     Plaintiff intends to send notice to all members of the WARN Class to the extent required by Rule 23.

40.     The relief sought in this proceeding is equitable in nature.

## CLAIM FOR RELIEF

### Violation of the Federal WARN Act

41.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

42.    At all relevant times, Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

43.    At all relevant times, Defendants was an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a)(3), and continued to operate as a business until it decided to order mass layoffs or plant closings at the Facilities.

44.    Beginning on or about December 14, 2017, Defendants ordered mass layoffs and/or plant closings at the Facilities, as those terms are defined by 29 U.S.C. § 210l(a)(2) and 20 C.F.R. § 639.3(i).

45.    The mass layoffs or plant closings at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Defendants' employees as well as thirty-three percent (33%) of Defendants' workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2101(a)(8).

46.    Plaintiff and the Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendants at the Facilities.

47.    Plaintiff and the Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 2101(a)(5).

48.    Defendants were required by the WARN Act to give the Plaintiff and the Class Members at least 60 days advance written notice of their terminations.

49.    Defendants failed to give Plaintiff and the Class members written notice that complied with the requirements of the WARN Act.

50.    Plaintiff and each of the Class Members are "aggrieved employees" of Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

51.    Defendants failed to pay Plaintiff and each of the Class Members their respective wages, salary, commissions, bonuses, accrued vacation and personal time off for 60 days following their respective terminations, and failed to make the pension and 401(k) contributions and provide employee benefits under COBRA for 60 days from and after the dates of their respective terminations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief as against Defendants:

A.    Certification of this action as a class action;

B.    Designation of Plaintiff as Class Representative;

C.    Appointment of the undersigned attorneys as Class Counsel;

D.    A judgment in favor of the Plaintiff and each of the affected employees equal to the sum of:  their unpaid wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for up to 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period all determined in accordance with the federal WARN Act, 29 U.S.C. §2104(a)(1)(A);

E.      Allowance of all damages as a wage priority status pursuant to 11 U.S.C. §

507(a)(4) and (5) up to $12,850, and the remainder as a general unsecured claim or,

alternatively, a first priority post-petition administrative expense pursuant to 11

U.S.C. § 503(b)(1)(A);

F.      Reasonable attorneys' fees and the costs and disbursements that Plaintiff will incur

in prosecuting this action, as authorized by the federal WARN Act, 29 U.S.C. §

2104(a)(6); and

G.      Such other and further relief as this Court may deem just and proper.


Dated: December 20, 2017

                                    Respectfully submitted,


                        By: /s/ Christopher D. Loizides
                            Christopher D. Loizides (No. 3968)
                            **LOIZIDES, P.A.**
                            1225 King Street, Suite 800
                            Wilmington, Delaware 19801
                            Telephone:      (302) 654-0248
                            Facsimile:      (302) 654-0728
                            E-mail:         loizides@loizides.com

                            Jack A. Raisner
                            René S. Roupinian
                            **OUTTEN & GOLDEN LLP**
                            685 Third Avenue, 25th Floor
                            New York, New York 10017
                            Telephone:      (212) 245-1000
                            Facsimile:      (646) 509-2060
                            E-mail:         jar@outtengolden.com
                                            rsr@outtengolden.com

                            *Attorneys for the Plaintiff and the putative class*